UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:13-CR-46-TLS |
| | ) | |
| CHRISTOPHER R. SEALS | ) | |

**OPINION AND ORDER**

The Defendant, Christopher R. Seals, was found guilty and convicted by a jury of armed bank robbery and aiding and abetting, violations of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2 (Count 1); use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 3). An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of the Defendant's sentencing. The Defendant objects to certain portions of the PSR, raising four issues: (1) whether the base offense level should be enhanced for reckless endangerment during flight; (2) whether the base offense level should be enhanced for physical restraint of a victim; (3) whether the base offense level should be enhanced for trafficking in firearms and stolen firearms; and (4) whether the Defendant possessed a firearm in connection with another felony offense.[1] The Government has a single objection: whether a four-level enhancement for possessing a firearm in connection with another felony offense is appropriate. The Court conducted an evidentiary hearing [ECF No. 87] during

---

[1] The Defendant also objects to two of the probation officer's proposed conditions of supervised release; namely, the conditions regarding third-party notification and participation in a substance abuse treatment program. On February 12, 2015, the Court issued a Notice of Proposed Conditions of Supervised Release [ECF No. 81] that declined to impose all of the conditions contained in Part F of the PSR. Because the Court's Notice declined to impose the two conditions of supervised release for which the Defendant objects, these objections are denied as moot.

1

which the parties presented argument regarding the propriety of the enhancements. The objections are ripe for ruling.

## FINDINGS OF FACT

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (quotation marks omitted); *see also United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011) ("At sentencing, courts may rely on presentence reports containing even double-hearsay, i.e., statements by coconspirators to investigators, so long as those statements are reliable."). At sentencing, "a district judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008) (quoting *United States v. Johnson*, 489 F.3d 794, 796–97 (7th Cir. 2008)). "Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'" *United States v. Bradley*, 628 F.3d 394,

400 (7th Cir. 2010) (quoting *England*, 555 F.3d at 622). "A district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, a court may rely on it. *Id.*

The Court conducted a four-day jury trial, beginning on September 16, 2014, and an evidentiary hearing on February 17, 2015. The Court incorporates by reference the record of this case, and will briefly recite some of the relevant facts.

On February 14, 2013, three masked individuals entered the PNC Bank, located at 5610 Coventry Lane, Fort Wayne, Indiana, and robbed the bank at gunpoint. The robbers approached from the back of the bank and entered through the front door. Two wore dark, hooded sweatshirts and black masks with small eyeholes pulled down over their faces, and one had a backpack. The robber with the backpack was carrying a gun as he went to the first teller station behind the teller counter, but the robber appeared to leave it on the floor by a teller's chair before entering the vault, as seen by surveillance video. He was not carrying a gun when he exited the vault. The three robbers left the bank through the back door.

Immediately after the robbery, a revolver was found near one of the wheeled legs of the teller's chair. It was loaded with Remington .38 special ammunition. DNA samples taken from the cartridges matched the DNA of the Defendant to a reasonable degree of scientific certainty. A cellular telephone ("cellphone") was also taken during the robbery from one of the victim employees. It was later recovered from a remote area along the suspected getaway route. A latent fingerprint recovered from the phone was identified as having been made by Deyante Stephens, also known by the nickname "Pooter."

On March 20, 2013, officers were involved in the pursuit of a black Infiniti sedan which

was associated with the Defendant and his brother, Charles Seals. Fort Wayne Police Department (FWPD) Officer Michael Bell spotted the Infiniti with at least two occupants, in the driver and front passenger seats. When Officer Bell activated his emergency lights, the Infiniti fled from the scene. A high-speed pursuit ensued, ending with a crash of the Infiniti. Two suspects exited the car and ran. A man named Nadir Armour remained in the back seat of the Infiniti. The two fleeing suspects were not located.

Crime scene technicians executed search warrants on the Infiniti and located the following evidence: a loaded Smith and Wesson pistol between the driver's seat and the door opening; a white cellphone under the gun; a black cellphone on the passenger side floor; and a photocopy of the Defendant's identification card and the driver's carbon copy of a traffic citation issued to the Defendant in the front console. Additionally, in the back seat area, the officers located a black knit hat with hand-cut eyeholes, a bag containing a plastic bag of money, several boxes of ammunition in different calibers, and other items. The bag of money consisted of 531 one-dollar bills and 700 ten-dollar bills. There was a box of 9mm Luger ammunition, a box of Remington .38 special ammunition, a box of .45 caliber ammunition, and 410 ammunition that could fit a .45 caliber gun. The officers found a dark blue, hooded sweatshirt, along with other clothing items, in the trunk.

A latent fingerprint was located on the gun from the Infiniti and identified as the fingerprint of the Defendant. Another latent fingerprint on the driver's door window was identified as the fingerprint of the Defendant's brother, Charles Seals. Downloaded data from the white cellphone indicated communications with "Pooter." There were numerous communications and emails identifying the phone as belonging to Charles Seals. The black cellphone contained conversations about the acquisition of guns. A scanner radio application had been installed on

the phone on February 13, 2013. Numerous communications identified the black cellphone as belonging to the Defendant. It was also determined that the black cellphone was used in close proximity to the time of the flight and subsequent crash of the Infiniti.

The Defendant was identified as a suspect for the PNC Bank robbery after DNA results were received from the gun left behind at the PNC Bank. The Defendant was interviewed by police on May 1, 2013. The Defendant was shown a photograph of the gun and he identified it as being the gun used in the PNC robbery, but claimed his knowledge was based on television news coverage. He denied ever seeing the gun in person. He later admitted that the gun was a .38 but denied that his DNA would be found on any PNC evidence. After Special Agent Stewart showed the Defendant the DNA report regarding the gun abandoned at the PNC Bank, the Defendant switched his story and admitted buying, touching, and loading the gun prior to the bank robbery. He also admitted that the black cellphone recovered in the Infiniti belonged to him and provided the numeric code to unlock the telephone. As the interview continued, the Defendant's story changed, and he admitted that his involvement in the bank robbery was to keep quiet, as "Pooter" and Charles Seals gave him money when they came back and told him to say nothing. The Defendant admitted that Charles Seals asked him to rob PNC Bank with him about three days before Valentine's Day but that the Defendant was too scared to do it.

A three-count Indictment was filed on May 22, 2013, and on September 19, 2014, a jury convicted the Defendant of all three counts. The addendum to the PSR indicated that the Government and the Defendant had objections to the application of various enhancements to the Defendant's base offense level as found in the PSR. On February 17, 2015, the Court held an evidentiary hearing during which the parties presented argument regarding the propriety of the enhancements. Having considered the complete record in this case and the parties' arguments,

the Court will now discuss each objection in turn.

## ANALYSIS

**A.  Enhancement for Reckless Endangerment During Flight**

The Defendant argues that the two-level enhancement for reckless endangerment during flight, pursuant to U.S.S.G. §3C1.2 and found in paragraph 27 of the PSR, is inappropriate because he was never identified as having been a passenger in the black Infiniti. The Defendant argues that he never admitted to being present in the car, and that the backseat passenger, Nadir Armour, identified Charles Seals as the driver but never identified the Defendant as being present in the car. Although the Defendant admits that his cellphone was in the car, he argues that any evidence suggesting that he was the front seat passenger in the car is merely circumstantial evidence. The Government argues that there is ample circumstantial evidence to establish that the Defendant was the front seat passenger in the car during the flight from police.

Although the pursuing officer did not visually identify the Defendant as being the front passenger seat passenger of the Infiniti, there were numerous items found in the car connecting the vehicle with the Defendant. First, a photocopy of the Defendant's identification card and the driver's carbon copy of a traffic citation issued to the Defendant were found in the front console. Second, a black cellphone was located on the passenger floorboard, and subsequent analysis of the data and communications of the phone identified it as belonging to the Defendant. Evidence presented at trial indicated recent use of the phone in close proximity to the time of the car chase and accident. At roughly the 1:57:00 to 2:05:00 mark of the recorded interview of the Defendant on May 1, 2013, he admits that his black cellphone was lost in the Infiniti, and he then provided officers with the passcode necessary to unlock the phone. Further, at the 2:07:00 mark, the

following exchange occurred between the Defendant and the interviewing officer.

> Officer: "You were with him [Charles Seals] in the crash?"
>
> Defendant: "Yeah, cause that's my car, that's why."
>
> Officer: "You weren't driving."
>
> Defendant: "I know."
>
> Officer: "Your [expletive] brother was driving. You were riding shotgun and you have Tiger [Nadir Armour] in the backseat sitting with the dufflebag."

Other items found in the car included a white cellphone, identified as belonging to Charles Seals, and a loaded Smith and Wesson pistol, both found between the driver's seat and the door opening. A latent fingerprint taken from the gun in the Infiniti was identified as belonging to the Defendant. A black knit hat with hand-cut eyeholes, a bag containing a plastic bag of money, and several boxes of ammunition in different calibers were found in the backseat area. A dark blue, hooded sweatshirt, along with other clothing items, was found in the trunk.

The Defendant previously objected to the admissibility of this evidence, but the Court overruled the Defendant's objections in its May 7, 2014, Opinion and Order [ECF No. 47], finding that a reasonably jury could conclude that the Defendant was the front seat passenger of the car when it fled from police and that he was in possession of the items found in the car. The Court incorporates by reference its earlier Opinion and Order, and finds that the preponderance of the evidence shows that the Defendant was the front seat passenger in the Infiniti when it fled from police. The Court finds that after the Infiniti crashed, the Defendant and the driver, Charles Seals, fled from the scene on foot, leaving behind Nadir Armour in the backseat along with the various items of evidence in the car already described.

The Defendant knew, as he acknowledged in his interview, that he could not legally

possess a firearm because he was a convicted felon. The pistol found in the car, which included the Defendant's latent fingerprint, as well as the ammunition, the items used in the robbery, and the proceeds from the robbery all provided incentive for the Defendant to flee from the police. It is of no consequence that the Defendant was the front seat passenger and not the driver, because after the high speed chase and crash, the Defendant and his brother both continued to flee from the scene and the evidence, leaving only Nadir Armour in the vehicle.

The Defendant bears the burden of showing that the PSR is not accurate or is unreliable, and must produce evidence beyond a bare denial that calls reliability of the alleged facts into question. *United States v. Davis*, 682 F.3d 596, 613 (7th Cir. 2012). The District Court may rely on factual information contained in the PSR "so long as it bears sufficient indicia of reliability to support its probable accuracy." *Id.* A bare denial by the Defendant may be enough if the PSR contains only a "naked or unsupported charge," but only after the Defendant's evidence casts doubt on the reliability of the facts in the PSR does the burden shift to the government to demonstrate the accuracy of the information. *Id.*; *United States v. Moreno-Padilla*, 602 F.3d 802, 809 (7th Cir. 2010).

The Court finds that the Defendant has failed to produce evidence that reasonably questions the reliability of the facts in the PSR. To the contrary, the Government has produced evidence supporting the facts in the PSR that the Infiniti led police on a high-speed chase through a residential neighborhood that ended when the vehicle crashed into two separate vehicles on Bowser Avenue. The Court finds that the Defendant was the front seat passenger in this Infiniti, and that the Defendant continued to flee on foot after the crash. Consequently, the Court finds that the preponderance of the evidence shows that the Defendant's high-speed flight from the police recklessly endangered the public and the police. As such, the two-level

8

enhancement for reckless endangerment during flight, pursuant to U.S.S.G. §3C1.2, is appropriate and the Defendant's objection is overruled.

**B.     Enhancement for Physical Restraint of a Victim**

The Defendant argues that the two-level enhancement for physical restraint of a victim, pursuant to U.S.S.G. §2B3.1(b)(4)(B) and found in paragraph 23 of the PSR, is inappropriate because he believes the evidence does not support the enhancement.

The Government argues that there are multiple instances of physical restraint within the record that support the enhancement. First, two bank employees were moved at gunpoint to various locations in the bank over the course of the robbery. The lead teller, Brittany Dillman, who was approximately seven months pregnant at the time, was moved from her teller station to the vault, and for a moment a gun was pointed at her stomach. The manager, Bradford Ziebell, was moved from his office to the teller station, and then to the vault. Both bank employees were then told to stay in the vault and the door was closed on them at the end of the robbery. In addition, Ziebell was placed in handcuffs. The Government argues that the forced movement around the bank, at gunpoint, is enough to support application of the enhancement notwithstanding the fact the Ziebell was placed in handcuffs and both he and Dillman were shut inside the vault.

The Government cites *United States v. Black*, 636 F.3d 893 (7th Cir. 2011), to support the proposition that the physical restraint enhancement is proper even when based on the actions of the defendant's accomplices. In *Black*, the defendant argued that his accomplice's conduct— ordering and forcing a bank teller to move to various places in the bank at gunpoint—did not constitute physical restraint because it was not similar enough to the examples of physical

9

restraint enumerated in the Guidelines, including tying, binding, or locking up the victim. *Id.* at 899–900. The Court of Appeals rejected this argument and found that "the fundamental characteristic of the physical restraint enhancement is to punish one for depriving a person of his freedom of physical movement, which can be accomplished by means beyond those statutory examples." In particular, the Court of Appeals reaffirmed its finding in *Taylor* that "'[w]hether a pointed gun is used to move a person into an unlocked room and keep him there, or used to move a person from one part of the robbery scene to another, the person's freedom of movement is restrained as effectively as by shoving or dragging him into a room and locking the door.'" *Id.* at 900 (quoting *United States v. Taylor*, 620 F.3d 812, 815 (7th Cir. 2010)).

The Court finds that the preponderance of the evidence shows that the victims were physically restrained during the robbery. Not only were two bank employees forced, at gunpoint, to move to various locations around the bank, both were shut inside the vault at the end of the robbery. In addition, Ziebell, the bank manager, was placed in handcuffs. These actions clearly establish that both victims were deprived of their freedom of physical movement and were thereby physically restrained. As such, the two-level enhancement for physical restraint of a victim, pursuant to U.S.S.G. §2B3.1(b)(4)(B), is appropriate and the Defendant's objection is overruled.

C. **Enhancements for Trafficking in Firearms and Stolen Firearms**

The Defendant argues that the four-level enhancement for trafficking of firearms, pursuant to U.S.S.G. §2K2.1(b)(5) and found in paragraph 34 of the PSR, and the two-level enhancement for stolen firearms, pursuant to U.S.S.G. §2K2.1(b)(4)(A) and found in paragraph 33 of the PSR, are inappropriate because he believes there is insufficient evidence to support the

10

enhancements.[2]

The Government argues that both enhancements are appropriate based on the trial evidence as well as statements made by the Defendant in an interview with law enforcement. While excerpts of the interview were presented at trial, the entire May 1, 2013, interview was admitted into evidence as Government's Exhibit 55 during the evidentiary hearing. As for the firearms being stolen, the Government argues that the Defendant admits that the guns were stolen because he is unable to legally purchase guns, but that he would acquire guns for use by his brother and others at the Bowser residence. As for the trafficking of firearms, the Government argues that the Defendant admitted during the interview that he and his brother were selling guns to co-Defendant Deyante Stephens and others.

The Court has reviewed the interview of the Defendant and finds that the preponderance of the evidence shows that the Defendant trafficked in firearms and had possession of stolen firearms. During the interview, the officers asked the Defendant numerous times about guns. When asked if he knew the guns were stolen, the Defendant answered "yeah," and when asked why he bought stolen guns, the Defendant responded "I can't get [any] regular guns," a reference to his status as a convicted felon. (Gov't Ex. 55 at 52:00–56:00.) Later, the Defendant acknowledged that he would buy a lot of stolen guns, citing a need for protection because "people shoot at us, trying to kill us." (*Id.* at 2:06:00–2:06:30.) The Defendant also informed officers that he set up the deals to buy the stolen guns as well as sell the guns, and that he and his associates would keep about five to six guns available at the Bowser Avenue residence. (*Id.* at

---

[2] The Addendum to the PSR mentions only an objection to trafficking of firearms and not to stolen firearms. However, because the parties discussed the issue of whether the firearms were stolen during their arguments at the February 17, 2015, evidentiary hearing, the Court will also address the potential stolen firearms objection.

52:00–57:00, 1:33:00–1:34:00.) The Defendant has not produced any evidence to question the facts in the PSR. Meanwhile, the Government has produced evidence establishing the credibility of the facts as laid out in the PSR. Consequently, the Court finds that the preponderance of the evidence shows that on multiple occasions the Defendant bought and sold stolen firearms. As such, the four-level enhancement for trafficking of firearms, pursuant to U.S.S.G. §2K2.1(b)(5), and the two-level enhancement for stolen firearms, pursuant to U.S.S.G. §2K2.1(b)(4)(A), are appropriate and the Defendant's objection is overruled.

D.   **Enhancement for Possession of a Firearm in Connection with another Felony Offense**

Finally, the Government argues that a four-level enhancement for possession of a firearm in connection with another felony offense, pursuant to U.S.S.G. §2K2.1(b)(6)(B), is appropriate in this case. The Defendant argues that this enhancement is inappropriate because it is already covered under the Guideline calculations based on the Defendant's conduct.

U.S.S.G. §2K2.1(b)(6)(B) provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The guidelines commentary explains that "in connection with" means the enhancement applies if the firearm facilitated, or had the potential of facilitating, another felony offense. U.S.S.G. §2K2.1, cmt. n.14. The guidelines commentary further explains that "[i]f the defendant used or transferred one of such firearms in connection with another felony offense (*i.e.*, an offense other than a firearms possession or trafficking offense) an enhancement under subsection (b)(6)(B) also would apply."

12

U.S.S.G. §2K2.1, cmt. n.13(D).

The addendum to the PSR indicates that the probation officer did not include an enhancement for possession of a firearm in connection with another felony offense for two reasons. First, the probation officer noted that the firearms in this case were possessed or trafficked. Specifically, the probation officer determined that the Defendant's conviction for being a felon in possession of a firearm pursuant to 18 U.S.C. § 924(c) (Count 3) precluded application of the firearm involved in the bank robbery towards this enhancement. Second, the probation officer cited *United States v. Johns*, 732 F.3d 736 (7th Cir. 2013), for the proposition that it is impermissible double counting to apply a trafficking enhancement and an increase for knowledge that the weapon would be used in connection with another felony offense where the enhancements are based on the same conduct.

In *Johns*, the Seventh Circuit found that the district court erred in applying the other felony offense enhancement because the other felony enhancement and the trafficking enhancement were based on the same conduct—John's transfer of the firearms to the Confidential Informant (CI) with knowledge that the CI was going to resell the firearms—and was impermissible double counting, which is expressly prohibited by Application Note 13(D) to §2K2.1. *Id.* at 740. The Government argues that the rule in *Johns* is inapplicable because it is not seeking to use the same offense conduct, namely trafficking, for both enhancements. Rather, the Government argues there are multiple other felonies which provide the support for application of the enhancement. First, the Government argues that the Defendant admitted to acquiring a community supply of guns for his buddies at the Bowser residence, who were also felons, which were used at various shootings and other crimes they wanted to commit. Second, the Government argues that the Defendant admitted to supplying a gun to his brother, Charles, and

selling a gun to Deyante Stephens, both of whom are felons. Third, the Government argues that the car chase involving the Infiniti was resisting law enforcement with a vehicle, which is a felony offense.

The Defendant argues, similar to the enhancement for reckless endangerment during flight, that only circumstantial evidence supports a finding that the Defendant was the front seat passenger in the Infiniti. For reasons already discussed, the Court finds that the preponderance of the evidence shows that the Defendant was the front seat passenger in the Infiniti and was in possession of the items located inside the car. Although the presence of other items, such as the proceeds from the bank robbery, would encourage the Defendant to flee, the Smith and Wesson pistol found between the front driver's seat and the door opening is of particular relevance with respect to the other felony enhancement. A latent fingerprint taken from the gun was identified as belonging to the Defendant. As the Defendant acknowledged in his interview, he was aware that he could not legally possess a firearm. The Court finds that the firearm both facilitated, and had the potential to facilitate, another felony offense. The Defendant knew that if he was caught with the gun he would be guilty of felon in possession of a firearm, a felony offense. The record reflects that the Infiniti fled from police in a high-speed chase before it crashed, and then the occupants of the driver and front passenger seats continued to flee on foot. As already stated, the Court finds that these two individuals were the Defendant and his brother, Charles. As already determined, the Defendant led police on a high-speed chase that recklessly endangered the public and placed others in substantial risk of bodily injury. In Indiana, it is a felony offense to resist law enforcement by fleeing in a vehicle. I.C. § 35-44.1-3-1. Hence, the Defendant's flight from the police in the Infiniti was another felony offense. The Court finds that the presence of the gun and the ammunition in the vehicle facilitated, or had the potential of facilitating, the other felony

14

offense of resisting law enforcement through flight in a vehicle.

The burden is on the Defendant to produce evidence bringing these facts into question. While the Government provides ample evidence of the Defendant's involvement with guns, the Defendant offers no evidence to question the reliability of the Government's evidence. Therefore, the four-level enhancement for possession of a firearm in connection with another felony offense, pursuant to U.S.S.G. §2K2.1(b)(6)(B), is appropriate and the Defendant's objection is overruled. For the same reasons, the Government's objection is sustained.

## CONCLUSION

For the foregoing reasons, the Defendant's objections to the PSR are OVERRULED. The Government's objection to the PSR and request for an enhancement for possession of a firearm in connection with another felony offense is SUSTAINED.

SO ORDERED on February 19, 2015.

      s/ Theresa L. Springmann
      THERESA L. SPRINGMANN
      UNITED STATES DISTRICT COURT