UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:13-CR-46-TLS |
| | ) | |
| CHRISTOPHER R. SEALS | ) | |

**OPINION AND ORDER**

The Defendant, Christopher R. Seals, was found guilty and convicted by a jury of armed bank robbery and aiding and abetting, violations of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2 (Count 1); use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 3). The Court sentenced the Defendant on February 23, 2015. On March 16, 2016, the Seventh Circuit Court of Appeals affirmed the Defendant's conviction but vacated his sentence in *United States v. Seals*, 813 F.3d 1038 (7th Cir. 2016). On remand, the probation officer drafted a Modified Presentence Investigation Report (PSR) in preparation for sentencing. The Court now resolves the Government's and the Defendant's objections to the PSR.

**FINDING OF FACT**

"At sentencing, a district court need only make findings of fact, such as the quantity of drugs attributable to a defendant, by a preponderance of the evidence." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012) (citing *United States v. Kransinki*, 545 F.3d 546, 551 (7th Cir. 2008), *overruled on other grounds by United States v. Taylor*, 778 F.3d 667, 669 (7th Cir. 2015)). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *Id.* The Federal Rules of Evidence do not apply to sentencing. *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the

1

information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citation and quotation marks omitted). *See also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("[s]entencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'") (quoting *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009)). As such, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id.*

"[A] full remand does not require the district court to rehear all (or any) of the evidence that it heard at the original sentencing hearing." *United States v. Mobley*, 833 F.3d 797, 802 (7th Cir. 2016). A "record that was compiled during a prior sentencing hearing is still valid, and the district court at a later sentencing hearing may continue to rely on it." *Id.* The Court conducted a four-day jury trial, beginning on September 16, 2014, and an evidentiary hearing on February 17, 2015. The Court incorporates by reference the record of this case, and will briefly recite some of the relevant facts.

On February 14, 2013, three masked individuals entered a PNC Bank, located at 5610 Coventry Lane, Indiana, and robbed the bank at gunpoint. The robbers approached from the back of the bank and entered through the front door. Two wore dark, hooded sweatshirts and black masks with small eyeholes pulled down over their faces, and one had a backpack. The robber with the backpack was carrying a gun as he went to the first teller station behind the teller counter, but the robber appeared to leave it on the floor by a teller's chair before entering the

2

vault, as seen by surveillance video. He was not carrying a gun when he exited the vault. The three robbers left the bank through the back door.

Immediately after the robbery, a revolver was found near one of the wheeled legs of the teller's chair. It was loaded with Remington .38 special ammunition. DNA samples taken from the cartridges matched the DNA of the Defendant to a reasonable degree of scientific certainty. A cell phone was also taken during the robbery from one of the victim employees. It was later recovered from a remote area along the suspected getaway route. A latent fingerprint recovered from the phone was identified as having been made by Deyante Stephens, also known by the nickname "Pooter."

On March 20, 2013, officers were involved in the pursuit of a black Infiniti sedan which was associated with the Defendant and his brother, Charles Seals ("Charles"). Fort Wayne Police Department (FWPD) Officer Michael Bell spotted the Infinite with at least two occupants in the front seats. When Officer Bell activated his emergency lights, the Infiniti fled from the scene. A high-speed pursuit ensued, ending with a crash. Two suspects exited the car and ran. A man named Nadir Armour remained in the back seat of the Infiniti. The two fleeing suspects were not located.

Crime scene technicians executed search warrants on the Infiniti and located the following evidence: a loaded Smith and Wesson pistol between the driver's seat and the door opening; a white cellphone under the gun; a black cellphone on the passenger side floor; and a photocopy of the Defendant's identification card and the driver's carbon copy of a traffic citation issued to the Defendant in the front console. Additionally, in the back seat area, the officers located a black knit hat with hand-cut eyeholes, a bag containing a plastic bag of money, several boxes of ammunition in different calibers, and other items. The bag of money consisted of 531

one-dollar bills and 700 ten-dollar bills. There was a box of 9mm Luger ammunition, a box of Remington .38 special ammunition, a box of .45 caliber ammunition, and 410 ammunition that could fit a .45 caliber gun. The officers found a dark blue hooded sweatshirt, along with other clothing items in the trunk.

A latent fingerprint was located on the gun from the Infiniti and identified as the finger print of the Defendant. Another latent fingerprint on the driver's door window was identified as the fingerprint of Charles. Downloaded data from the white cellphone indicated communications with Stephens. There were numerous communications and emails identifying the phone as belonging to Charles. The black cellphone contained conversations about the acquisition of guns. A scanner radio application had been installed on the phone on February 13, 2013. Numerous communications identified the black cellphone as belonging to the Defendant. It was also determined that the black cellphone was used in close proximity to the time of the flight and subsequent crash of the Infiniti.

The Defendant was identified as a suspect for the for the PNC Bank robbery after DNA results were received from the gun left behind at the PNC Bank. Police interviewed the Defendant on May 1, 2013. The Defendant was shown a photograph of the gun and he identified it as being the gun used in the PNC robbery, but claimed his knowledge was based on television news coverage. He denied ever seeing the gun in person. He later admitted that the gun was a .38 but denied that his DNA would be found on any PNC evidence. After Special Agent Stewart showed the Defendant the DNA report for the gun abandoned at the PNC Bank, the Defendant switched his story and admitted buying, touching, and loading the gun prior to the bank robbery. He also admitted that the black cellphone recovered in the Infiniti belonged to him and provided the numeric code to unlock the phone. As the interview continued, the Defendant's story

4

changed, and he admitted that his involvement in the bank robbery was to keep quiet, as Stephens and Charles gave him money when they came back and told him to say nothing. The Defendant admitted that Charles asked him to rob PNC Bank with him about three days before Valentine's Day, but claimed that he was too scared to do it.

A three-count Indictment was filed on May 22, 2013, and on September 19, 2014, a jury convicted the Defendant on all three counts. On February 23, 2015, the Court sentenced the Defendant to 188 months on Count 1 for armed bank robbery, a consecutive 84 months on Count 2 for a violation of 18 U.S.C. § 924(c), and a concurrent 120 months on Count 3 for possessing a firearm as a felon. The Defendant appealed, and on March 16, 2016, the Court of Appeals for the Seventh Circuit affirmed the Defendant's conviction but vacated his sentence. *United States v. Seals*, 813 F.3d 1038, 1049 (7th Cir. 2016). The Seventh Circuit found plain error in the Court's failure to make factual findings to support a conclusion that the Defendant actively participated in the police chase when the Court applied two enhancements under U.S.S.G. § 3C1.2 and § 2K2.1(b)(6)(B). The modified PSR does not include these enhancements.

## ANALYSIS

The Government has two objections to the PSR. The Government first asks the Court to make the appropriate factual findings to justify a four point sentencing enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2, and second asks for another two point sentencing enhancement for possessing a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6)(B). The Government argues that even if the Court ultimately does not sustain these objections, the Defendant's conduct nevertheless would justify an upward variance pursuant to 18 U.S.C. § 3553(a). In turn, the Defendant objects to Part G(1) of the PSR, which recommends that the Defendant make restitution payments in a fixed amount of $50.00

per month commencing one month after his placement on supervision. "In the course of imposing a new sentence, the district court is authorized to reconsider all elements of the sentence, including in particular the prison term and the conditions of supervised release." *United States v. Mobley*, 833 F.3d at 797. "Because a criminal sentence is normally a package that includes several component parts (term of imprisonment, fine, restitution, special assessment, supervised release), when one part of the package is disturbed," the district court is encouraged "to reconsider the sentence as a whole so as to 'effectuate its sentencing intent.'" *Id.* at 801 (citing *Pepper v. United States*, 562 U.S. 476, 507 (2011)). The district court "may consider any relevant evidence or arguments that are properly admissible at the new hearing." *Id.* Accordingly, the Court will address each objection in turn.

A.  **The Government's Objection for Declining to Include a Sentencing Enhancement for Reckless Endangerment During Flight Pursuant to U.S.S.G. § 3C1.2**

A defendant's guideline range is increased by two levels "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Application Note 5 states: "the defendant is accountable for the defendant's own conduct and for the conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." Another way of putting it, in order for the sentencing enhancement under § 3C1.2 to apply, the conduct must be "related to the offense of conviction." *Seals*, 813 F.3d at 1046. In the context of a car chase, "some form of direct or active participation . . . is necessary for" the enhancement to apply to a passenger. *Id.* at 1048 (quoting *United States v. McCrimon*, 788 F.3d 75, 79 (2d Cir. 2015)).

The Government argues that as the Court previously observed during the Defendant's first sentencing, the Defendant had great incentive and motivation to flee from the police because this fingerprint was on the gun and because the car contained proceeds of the robbery and items

used in the robbery. By his own admission and based upon the evidence found in the car, the car belonged to the Defendant, and the Government contends that it is reasonable to expect Charles as the driver to have the support and encouragement of the car's owner. The Government notes that according to the testimony of Stephens, the black Infiniti was also the car used for the getaway from the bank. The Government contends that the coordinated flight on foot from the crash scene further showed the Defendant's encouragement and active participation in the chase. The Government argues that the chase should be considered part of relevant conduct because the chase was prompted by the robbers' efforts to avoid detection. Lastly, the Government argues that the Defendant at the time of the original sentencing argued only that the enhancement was not proper because he was not in the car at all.

The Defendant in response argues that the March 20, 2013, chase was not relevant conduct to the specific offense of conviction as required under § 1B1.3. The Defendant argues that for the Guideline to apply, the Government must show that the Defendant undertook a reckless flight to escape liability for the Valentine's Day Robbery. The Defendant argues that the Government fails to make this showing for two reasons. First the Government did not prove that the chase on March 20 was related to the February 14 armed bank robbery and felon in possession convictions, and second, that the Government did not prove that the Defendant aided and abetted Charles, the driver of the Infiniti.

In light of the Seventh Circuit's decision in *Seals*, the Court declines to apply the sentencing enhancement under U.S.S.G. § 3C1.2. First, the record does not sufficiently establish that the Defendant's actions on March 20, 2013, were undertaken to avoid detection for the specific offenses of conviction in this case—the bank robbery, using a gun in furtherance of the bank robbery, and being a felon in possession of the gun used on February 14. The Court notes

the testimony of Stephens, that the black Infiniti was also used for the getaway from the bank. However, the record does not establish that the specific offense characteristics are applicable here where 34 days elapsed between the bank robbery and the car chase. The passage of this much time makes it difficult to establish that the car chase and subsequent flight on foot were to avoid detection for the bank robbery. *See United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005) (holding § 3C1.2 is inapplicable when the defendant "committed the offense o[f] conviction on a single day . . . a full two months before the . . . flight"). The Court also notes that although the Defendant's fingerprints were on the gun found in the black Infiniti during the chase, the Defendant was not convicted of being a felon in possession of this gun. Rather, his conviction relates to an entirely different weapon—the revolver from the bank robbery.

Second, the record does not sufficiently establish for the purposes of applying U.S.S.G. § 3C1.2 that the Defendant caused or otherwise aided and abetted in the chase. "[A] person is liable . . . for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014). "Mere presence" at the crime scene is insufficient to make a finding of aiding and abetting liability. *United States v. Jones*, 713 F.3d 336, 352 (7th Cir. 2013) (noting that the "prohibition on speculative inferences based solely on guilt by association or mere presence is especially relevant in aiding and abetting cases"). However, the active participation of a passenger may be inferred from the circumstances and from the conduct before, during, and after the chase. *United States v. Byrd*, 689 F.3d 636, 640–41 (6th Cir. 2012).

The Court notes its original findings that the black Infiniti was involved in a high-speed police chase on March 20, 2013, and after that chase ended with a crash, two men ran from the

8

Infiniti, with Nadir Armour remaining in the backseat. In the Infiniti, officers located a loaded pistol on the driver's side with the Defendant's fingerprint, a white cellphone under the gun, a black cell phone on the passenger's side, a copy of the Defendant's identification card and traffic citation issued to the Defendant, a robbery mask with cut eyeholes, a bag of money, and ammunition in multiple calibers. Communications through the phones identified the white phone belonging to Charles and the black phone belonging to the Defendant. In a subsequent interview with agents, the Defendant admitted that the black cellphone was his, and admitted that the black Infiniti was his car. The Court concludes that although the Defendant was likely the front seat passenger during the chase, the Court cannot sufficiently determine that he aided and abetted Charles's flight and thereby justify a sentencing enhancement pursuant to § 3C1.2.

**B.     The Government's Objection for Declining to Include a Sentencing Enhancement for Possessing a Firearm in Connection with Another Felony Offense Pursuant to U.S.S.G. § 2K2.1(b)(6)(B)**

U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The Guidelines commentary explains that "in connection with" means the enhancement applies if the firearm facilitated, or had the potential of facilitating, another felony offense. U.S.S.G. § 2K2.1 cmt. N.14. Under the Seventh Circuit's decision in *Seals*, "the firearm in question must be 'part of the same course of conduct or common scheme or plan' as the offense of conviction." *Seals*, 813 F.3d 1045. "In determining whether subsection (b)(6)(B) applies . . . the threshold question for the court is whether the two unlawful possession offenses . . . were part of the same course of conduct or common scheme or plan." U.S.S.G. § 2K2.1, cmt. N14(E)(ii). Offenses are part of "the same course of conduct or common scheme or plan" if they are "substantially connected to each other by at least one common factor" or "sufficiently connected to each other as to warrant

the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. N.5(B). "[T]he drafters of the Guidelines intended for these concepts to connect, for sentencing purpose, criminal activity that otherwise might be considered separately, such as long-term conspiracies. In determining whether the enhancement applies, "the court must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles." *Id.* Cmt. n.14(E) (citing § 1B1.3(a)(1)–(4) and accompanying commentary). "It is the government's burden to establish by a preponderance of the evidence facts that justify applying a sentencing enhancement." *United States v. Sienkowski*, 359 F.3d 463, 466 (7th Cir. 2004).

Here, the sentencing enhancement suffers from the same defect as the first: for § 2K2.1(b)(6)(B), the specific offense of conviction does not include the March 20, 2013 car chase and the firearm with the Defendant's fingerprints on it. There is insufficient evidence for purposes of § 2K2.1(b)(6)(B) for the Government to establish that the events of March 20, 2013, are part of the same course of conduct or common scheme or plan. *See Seals*, 813 F.3d 1046 (the facts "do not, standing alone, support a finding that the bank robbery and the car chase were part of a 'common scheme or plan' or the 'same course of conduct'").

Furthermore, for the purposes of § 2K2.1(b)(6)(B), the Government also has not established that the Defendant committed another felony during the March 13, 2013 chase. In Indiana, it is a felony offense to resist law enforcement by fleeing in a vehicle. I.C. § 35-44.1-3-1. "[F]light alone is insufficient to sustain a conviction" under the statute. *Bradley v. Indiana*, 153 Ind. App. 421, 427 (Ct. App. Ind. 1972). However, a gun does have the potential to facilitate a felony when it emboldens the criminal. *United States v. LePage*, 477 F.3d, 488 (7th Cir. 2007).

Here, in light of the Seventh Circuit's decision, upon reexamination the Court finds that the record does not contain sufficient facts to support a conclusion that the Defendant encouraged or intended Charles to flee. *See Rosemond*, 134 S. Ct. at 1249 (reversing conviction when defendant lacked an opportunity to formulate intent to support a crime); *Cf. Smith v. Indiana*, 809 N.E.2d 938, 945 (Ind. Ct. App. 2004) ("[W]hen the police activated the emergency lights and siren . . . [the defendant] took the license out of the car's rear window so that the police could not identify [the] car."). "Motive and opportunity alone" are not sufficient to prove guilt. *United States v. Musgraves*, 831 F.3d 454, 467 (7th Cir. 2016). Therefore, the Court declines to apply a sentencing enhancement for possessing a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

**C.** **The Defendant's Objection to Restitution Payments as a Condition of Supervised Release**

The Defendant objects to a condition of supervised release that he make restitution payments in a fixed amount of $50.00 per month commencing one month after his placement on supervision. (PSR ¶ (G)(1).) The Defendant argues that because he is indigent, the proposed condition effectively gives him one month to find employment that will provide him with at least $50 of disposable income or face additional penalties for violating a condition of release. The Defendant argues that the Court should instead deduct a reasonable percentage of his monthly disposable income to be paid toward restitution in order to avoid revocation based on his inability to repay. The Court notes the Defendant's objection and will address it with the parties at the next pre-sentencing status conference.

**D. § 3553(a) Sentencing Variance**

In imposing a sentence, § 3553(a) requires a court to consider the nature and circumstances of the offense and history characteristics of the defendant, and impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: adequately capturing the seriousness of the offense, providing just punishment, promoting respect for the law, affording adequate deterrence, protecting the public, and rehabilitating the defendant. In making this determination, a district court may not presume that the Guidelines sentence is the correct one. *United States v. Nelson*, 555 U.S. 350, 352 (2009); *Rita v. United States*, 551, U.S. 338, 351 (2007). The Court reserves its authority to impose a sentence that represents a variance from the Guideline range if such a sentence is necessary to satisfy the purposes of sentencing. That determination of the appropriate sentence cannot be determined until after the Defendant and the Government have had an opportunity to address the Court at the Sentencing hearing. Additionally, the Court notes the Defendant's argument in his brief that two Criminal History points for an unauthorized absence from home detention "result[ing] in almost 3 additional years in prison contravenes the Guidelines' basic principle of promoting fairness and uniformity in sentencing." (Def.'s Opp'n to Gov.'s Sentencing Mem. 12–13, ECF No. 138.) The Defendant did not present this argument as an objection to the PSR. However, that may well have been the Defendant's intent to instead address this as part of his § 3553(a) presentation. The defense can clarify the record on this point at the next Sentencing Status Conference.

**CONCLUSION**

For the reasons stated above, the Government's objections to the PSR are OVERRULED. The Court has taken the Defendant's objection to restitution as a condition of supervision under further consideration. The Court will address any requests for a variance by the parties in consideration of the 18 U.S.C. § 3553(a) sentencing factors, particularly the need for any further development of the record, at the next Sentencing Status Conference. The Sentencing Status Conference is SET for February 8, 2017 at 2:30 PM.

SO ORDERED on January 13, 2017

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT